UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 19 C 3972 |
| v. | ) ) | Magistrate Judge M. David Weisman |
| B.D. MCCLURE & ASSOCIATES, LTD., | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Navigators Specialty Insurance Company issued an insurance policy to B.D. McClure & Associates, Ltd. ("BDM") and now sues for a declaration that it does not have duty to defend or indemnify BDM in connection with a lawsuit filed against it by American Guarantee and Liability Insurance Company ("AGLIC"). The case is before the Court on the parties' Federal Rule of Civil Procedure 12(c) cross motions for judgment on the pleadings. For the reasons set forth below, the Court grants Navigators' motion and denies BDM's motion.

**Facts**

Navigators issued an insurance agents errors and omissions policy to BDM, an insurance producer, for the policy period of August 17, 2018 to August 17, 2019. (Answer, ECF 10 ¶ 6.) The policy states:

> Subject to the Limit of Liability for Each Claim set forth in Item 3.A. and the Aggregate for all Claims set forth in Item 3.B. of the Declarations, the Company will pay on behalf of the Insured all Loss in excess of the retention which the Insured is legally obligated to pay as a result of a Claim first made against the Insured during the Policy Period or the Extended Reporting Period and reported in

> writing to the Company pursuant to the provisions of this Policy, for an alleged Wrongful Act committed by the Insured or by any other person or entity for whose Wrongful Acts the Insured is legally responsible, solely in rendering or failing to render Professional Services, provided that:
>
>> 1. such alleged Wrongful Act and all Related Wrongful Acts were committed on or subsequent to the Retroactive Date specified in Item 5. of the Declarations and prior to the expiration of the Policy Period; and
>> 2. prior to the First Inception Date, no Insured knew or reasonably could have known that such Wrongful Act could result in a Claim.

(*Id.* ¶ 9) (emphasis omitted). The policy defines "First Inception Date" as "the earlier of the inception date of this Policy or the inception date of the first policy issued by the Company which was continuously renewed to the inception date of this Policy." (*Id.* ¶ 10) (emphasis omitted). It defines "Wrongful Act" as "a negligent act, error or omission or Personal Injury committed by an Insured . . . solely in the rendering or failure to render Professional Services." (*Id.*) (emphasis omitted). It defines "Claim" as, inter alia, "a written demand for money or services made against any Insured" or "a civil . . . proceeding brought against any Insured seeking monetary damages and commenced by the service of a complaint or similar pleading," and "Related Claim" as "all Claims . . . arising out of a single Wrongful Act or a series of . . . Wrongful Acts that have a common nexus, are interrelated, or are logically or causally connected by reason of any fact, circumstance, situation, event, transaction, practice, act, error, omission, [or] decision." (*Id.*) (emphasis omitted).

BDM entered into a producer agreement with insurer AGLIC pursuant to which AGLIC issued an insurance policy to MBI Holdings, Inc. (*Id.* ¶¶ 13, 15.) In October 2008, Nathan Orlando was injured at a site owned by MBI. (*Id.* ¶ 15.) BDM learned of the incident, at the latest, in August 2009. (*Id.*) On May 10, 2010, Orlando filed suit against MBI. (*Id.*) BDM was aware of

2

the Orlando suit, but did not notify AGLIC of it until June 20, 2013, after a jury verdict for Orlando had been upheld on appeal. (*Id.*)

On June 19, 2015, AGLIC sued BDM in Illinois state court, alleging that BDM had breached the producer agreement by failing to timely notify AGLIC of the Orlando claim, causing AGLIC to incur damages of $483,651.39. (*Id.* ¶¶ 15-16; *see* Compl., ECF 1, Ex. 2.) On July 20, 2017, AGLIC filed a first amended complaint, adding certain factual allegations but seeking the same recovery from BDM. (Answer, ECF 10, ¶¶ 17-18; *see*, Compl., ECF 1, Ex. 3.) On September 28, 2017, AGLIC voluntarily dismissed the suit. (Answer, ECF 10 ¶ 21.)

On September 24, 2018, AGLIC refiled the state court suit against BDM, asserting the same claims as it had alleged in the 2015 suit. (Answer ¶¶ 22-25; *see* Compl., ECF 1, Ex. 4.) BDM notified Navigators of the AGLIC suit in November 2018 and asked Navigators to provide a defense and coverage for it. (Answer, ECF 10 ¶ 29.) Navigators declined to do so (*id.* ¶ 30), and this suit followed.

## Discussion

"Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). In ruling on a motion for judgment on the pleadings, the Court may consider "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

Under Illinois law,[1] "the construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court." *Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993). "In determining whether the insurer has a duty to defend, a court applies what is known as the 'eight-corners' rule: we compare the four corners of the underlying complaint with the four corners of the policy, according both the complaint and the policy a liberal construction." *Madison Mut. Ins. Co. v. Diamond State Ins. Co.*, 851 F.3d 749, 753 (7th Cir. 2017). "If the underlying complaint alleges facts within or potentially within policy coverage, the insurer is obligated to defend its insured even if the allegations are groundless, false, or fraudulent." *Konami (Am.) Inc. v. Hartford Ins. Co. of Ill.*, 761 N.E.2d 1277, 1281 (Ill. App. Ct. 2002).

In the first amended complaint filed in the 2015 suit, AGLIC alleged that: (1) AGLIC and BDM were parties to a 2004 and a 2007 insurance producer agreement, which required BDM to "immediately" notify AGLIC of any claims or suits that involve AGLIC's insured; (2) AGLIC issued a liability insurance policy to MBI, and BDM was the producer for that policy pursuant to the producer agreements; (3) Nathan Orlando was injured on a site owned by MBI in October 2008; (4) Orlando's counsel sent a letter to MBI on August 10, 2009 seeking damages and advising MBI to send the letter to its insurance carrier; (5) BDM knew about the Orlando incident and represented itself as the MBI claims administrator in August 2009; (6) Orlando filed suit against MBI on May 10, 2010; (7) in June 2010, BDM knew about the Orlando suit and retained defense counsel to represent MBI in it; (8) BDM did not give AGLIC notice of the Orlando suit until June 20, 2013; and (9) on December 11, 2013, AGLIC sent a letter to BDM asserting that BDM was in breach of the producer agreements with respect to the Orlando suit and AGLIC would seek to

---

[1] Both parties cite Illinois law.

recover from BDM any money AGLIC contributed to the judgment in the Orlando suit. (Answer ¶¶ 15, 18; Compl., ECF 1, Ex. 3, AGLIC Compl.; *id.*, Exs. 31-32.) The complaint in AGLIC's 2018 suit is identical to the first amended complaint in AGLIC's 2015 suit. (Answer, ECF 10, ¶¶ 22-28.)

Navigators contends that it has no duty to defend or indemnify BDM in connection with the AGLIC suit because that suit is a claim that was first made before the policy period. According to the policy's plain language, "[a]ll Claims", *i.e.*, "written demand[s] for money . . . made against any Insured" or "civil . . . proceeding[s] brought against any Insured seeking monetary damages and commenced by the service of a complaint or similar pleading," involving the same "Wrongful Act," *i.e.*, "a negligent act, error or omission . . . committed by an Insured . . . in the rendering or failure to render Professional Services," "will be considered a single Claim and will be deemed to have been made on," as relevant here, "the earliest date on which any such Claim was first made." (*Id.* ¶¶ 10-12) (emphasis omitted). It is undisputed that AGLIC sent a written demand for money to BDM for the Orlando suit in December 2013, and first filed suit against BDM on that claim in 2015, three years before the inception date of the Navigators policy to BDM. (*Id.* ¶¶ 14-18.)

Nonetheless, BDM asserts that Navigators is not entitled to judgment because the exhibits to AGLIC's 2015 suit demonstrate that AGLIC did not issue the policy to MBI pursuant to the 2004 or 2007 producer agreements between BDM and AGLIC, as AGLIC alleges. *See Bajwa v. Metro. Life Ins. Co.*, 804 N.E.2d 519, 531 (Ill. 2004) (noting the "general rule that if there is an inconsistency between an allegation of a complaint and a fact as shown in an exhibit . . . to the complaint" on which the complaint is based, the exhibit controls). Specifically, BDM says it is identified as distributor 99851920 in the two producer agreements and as producer 30282-000 in the MBI policy. (*See* Compl., ECF 1, Ex. 3, 2015 Suit, Exs. 30, 31 & 32 at 1.) Given that the

producer and distributor numbers on the documents do not match, BDM says the pleadings establish that the MBI policy was not subject to the 2004 or 2007 producer agreements.[2]

There is, however, no exhibit to the 2015 complaint[3] that says "producer" number, which appears on the producer agreements, and "distributor" number, which appears on the MBI policy, mean the same thing. Consequently, the exhibits to the 2015 complaint do not, as BDM argues, trump AGLIC's allegation that the MBI policy is subject to the 2004 and 2007 producer agreements. Thus, the 2015 complaint alleges that BDM breached its duty under the producer agreements to immediately tell AGLIC about the Orlando suit. That alleged breach is a "Wrongful Act" within the meaning of the Navigators policy.[4]

Navigators argues, however, that the policy does not cover this "Wrongful Act" because the AGLIC suit was not a claim first made within the policy period. The policy provides that "all Claims involving the same Wrongful Act . . . will be considered a single Claim, and will be deemed to have been made on . . . the earliest date on which any such Claim was first made." (Compl, Ex. 1, ECF 1-1 § X(E).) AGLIC first made a claim, that is a written demand for money (*see id.* § IV(E)), for BDM's failure to timely notify AGLIC of the Orlando suit, in December 2013. (*See id.*, Ex. 3, 2015 Compl., Ex. 26.) AGLIC repeated that demand in the 2015 and 2018 lawsuits. (*See id.*, Exs. 2-4.) Because all of AGLIC's demands arose from a single alleged wrongful act, the

---

[2] BDM asserts that the MBI policy was issued pursuant to a 2005 producer agreement between AGLIC and BDM, and has submitted one page of that agreement and an affidavit of Brian McClure, president of BDM, as support. (*See* BDM's Resp. & Exs., ECF 25, Exs. 4 & 5.) However, neither of these documents is attached to the complaint or answer, and thus neither can be considered on this motion. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (on a motion for judgment on the pleadings, the Court may consider "the complaint, the answer, and any written instruments attached as exhibits").
[3] The same exhibits are attached to the 2018 complaint. (Answer, ECF 10 ¶ 24.)
[4] Even if the exhibits to the 2015 complaint established that the AGLIC policy was not issued pursuant to the 2004 and 2007 producer agreements, BDM would fare no better because, in that case, BDM's failure to notify AGLIC of the Orlando suit would not be a "Wrongful Act" within the meaning of the policy.

policy deems them to be a single claim that was first made in December 2013, nearly five years before the inception date of the Navigators policy in August 2018.

Moreover, to be covered, the policy requires that the "Wrongful Act" or "Related Wrongful Acts" that are the subject of the claim "were committed on or subsequent to the Retroactive Date specified in Item 5. of the Declarations," *i.e.*, July 18, 2011. (ECF 1-1 Decl., § 5 & Insuring Agreement § 1.) As noted above, BDM knew about the Orlando incident in August 2009 and was aware of the May 2010 suit he filed against MBI. (Answer, ECF 10 ¶ 15.) Thus, the "Wrongful Act" underlying the instant claim, BDM's failure to notify AGLIC, occurred before the retroactive date.

Further, even if the "Wrongful Act" had occurred and the claim had been made within the appropriate periods, the policy's plain language would still exclude coverage for it. The policy states:

> Navigators will not be liable to make any payment of Loss in connection with any Claim based upon, arising out of, relating to directly or indirectly resulting from, in consequence of, or in any way involving[,] [a]s of the First Inception Date, [any] prior and/or pending civil, criminal, administrative, or investigative proceeding involving any Insured, and which was known to the Insured, or any fact, circumstance, or situation underlying or alleged in such proceeding.

(ECF 1-1 § V(B) (emphasis omitted). It is undisputed that as of the Navigator policy inception date of August 17, 2018, the situation alleged in the 2015 and 2018 lawsuits, *i.e.*, BDM's alleged failure to notify AGLIC of the Orlando suit, was known to BDM. Thus, coverage would be excluded.

In short, the eight-corners test establishes that the AGLIC suit against BDM does not even potentially fall within the coverage of the Navigators policy. Accordingly, Navigators does not have a duty to defend or indemnify BDM with respect to that suit.

**Conclusion**

For the reasons set forth above, the Court grants Navigators' motion for judgment on the pleadings [14], denies BDM's motion for judgment on the pleadings [13], declares that Navigators does not have a duty to defend or indemnify BDM in connection with the AGLIC suit, and terminates this case.

**SO ORDERED.**                                    **ENTERED:   October 6, 2020**

**M. David Weisman**
**United States Magistrate Judge**